**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01168-RMR-SP

SUSAN OWEN-BROOKS,
SUZANNE COOK,
CRYSTAL BANE,
JADA LOONEY, on behalf of her three minor children, M.L., J.L., and S.L., and
REBECCA DOUGHERTY, individually and on behalf of all others similarly situated,

  Plaintiffs,

v.

DISH NETWORK CORPORATION,

  Defendant.

Civil Action No. 1:23-cv-01315-SKC

DANIEL CLARK, on behalf of himself and all others similarly situated,

  Plaintiff,

    v.

DISH NETWORK, LLC,

  Defendant.

Civil Action No. 1:23-cv-01319-SKC

JOHN CRUSE, individually and on behalf of all others similarly situated,

  Plaintiff,

    v.

DISH NETWORK, LLC,
DISH NETWORK CORPORATION,

  Defendants.

Civil Action No. 1:23-cv-01346-SP

CHRISTIE TURLEY, individually and on behalf of all others similarly situated,

     Plaintiff,

         v.

DISH NETWORK, LLC,

     Defendant.

---

Civil Action No. 1:23-cv-01372-PAB-STV

ALAN ELLERBROCK, individually and on behalf of all others similarly situated,

     Plaintiff,

         v.

DISH NETWORK CORPORATION,

     Defendant.

---

Civil Action No. 23-cv-01387-GPG-MEH

LAINA JENKINS, individually and on behalf of all others similarly situated,

     Plaintiff,

         v.

DISH NETWORK, LLC,

     Defendant.

---

Civil Action No. 1:23-cv-01405-SP

MICHAEL CARDENAS, individually and on behalf of all others similarly situated,

     Plaintiff,

          v.

DISH NETWORK, LLC,

     Defendant.

Civil Action No. 1:23-cv-01462-NYW-NRN

LAURA VEST, individually and on behalf of all others similarly situated,

     Plaintiff,

          v.

DISH NETWORK CORPORATION

     Defendant.

Civil Action No. 1:23-cv-01556-RMR

RITHA FULMORE, on behalf of herself and all others similarly situated,

     Plaintiff,

          v.

DISH NETWORK CORPORATION, and
DISH NETWORK, LLC

     Defendants.

Civil Action No. 1:23-cv-01458-SKC

TERESA GARZA, on behalf of herself and all others similarly situated,

      Plaintiff,

          v.

DISH NETWORK CORPORATION

      Defendant.

**PLAINTIFF RITHA FULMORE'S CORRECTED MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a), APPOINT INTERIM LEAD CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(3), AND TO SET A BRIEFING SCHEDULE**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT .............................................................................................................. 2

     A.    The Related Actions Should Be Consolidated .......................................... 2

     B.    The Court Should Appoint Interim Co-Lead Class Counsel ................................. 5

          1.    Legal Standard Under Rule 23(g)(3) ........................................................... 5

C.    The Court Should Set a Briefing Schedule ........................................................ 15

III.   CONCLUSION ........................................................................................................ 15

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                      <u>Page</u>

*Breaux v. Am. Family Mut. Ins. Co.*,
    220 F.R.D. 366 (D. Colo. 2004) ..............................................................................................3

*Cardenas v. DISH* Network L.L.C.,
    Case No. 1:23-cv-01405 .........................................................................................................2

*Chen v. Target Corp.*,
    No. 21-cv-1247 (DWF) (DTS),
    2021 WL 6063632 (D. Minn. Dec. 22, 2021).......................................................................6

*Clark v. DISH Network L.L.C.*,
    Case No. 1:23-cv-01315 .........................................................................................................2

*Cruse v. DISH Network LLC, et al.,*
    Case No. 1:23-cv-01319 .........................................................................................................2

*Ellerbrock v. DISH Network Corporation*,
    Case No. 1:23-cv-01372 .........................................................................................................2

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019).............................................7

*Garza v. DISH Network*, LLC,
    No. 1:23-cv-01458 .................................................................................................................2

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ...........................................7

*In re Allianz Global Investors Structured Alpha Litigation*,
    No. 20-cv-7154 (S.D.N.Y.).....................................................................................................9

*In re Beech-Nut Nutrition Company Baby Food Litigation*,
    No. 1:21-cv-133 (DNH) (CFH) (N.D.N.Y) ........................................................................10

*In re Data Security Cases Against Nelnet Servicing, LLC,*
    4:22-cv-03267-JMG-CRZ (D. Neb) ...................................................................................14

*In re EpiPen Direct Purchaser Litigation*,
    No. 20-cv-827 (D. Minn.)....................................................................................................10

*In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*,
No. 14-cv-10318,
2015 WL 1216318 (N.D. Ill. Mar. 5, 2015)............................................................................6

*In re Oppenheimer Fixed Income Fund Actions,*
Case Nos. 09-cv-386-JLK-KMT (D. Colo.) .......................................................................10

*In re Oppenheimer Rochester Funds Group Securities Litigation*,
Case No. 09-md-2063-JLK-KMT (D. Colo.) ......................................................................10

*In re Philips Recalled CPAP, Bi-Level PAP,*
*and Mechanical Ventilator Products Liability Litigation*,
No. 21-cv-1230 (W.D. Pa.)..................................................................................................10

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) ..........................................................................10

*In re Robinhood Outage Litig.*,
No. 20-cv-1626 (JD),
2020 WL 7330596 (N.D. Cal. July 14, 2020).....................................................................12

*In re Rutter's Inc. Data Security Breach Litigation*,
No. 1:20-cv-382, ECF No. 12 (M.D Pa. Mar. 26, 2020) ..............................................4, 14

*In re Sonic Corp. Customer Data Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ...................................7

*In re Terazosin Hydrochloride Antitrust Litigation*,
220 F.R.D. 672 (S.D. Fla. 2004)..........................................................................................8

*Jackson v. Allianz Global Investors*,
Index No. 651233/2021 (N.Y.S.).........................................................................................9

*Jenkins v. DISH Network*, LLC,
Case No. 1:23-cv-01387 .....................................................................................................2

*Kaplan v. 21st Century Oncology Holdings, Inc.*,
No. 2:16-cv-210, 2016 WL 9383330 (M.D. Fla. July 21, 2016)
*report and recommendation adopted*,
No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016)........................................3

*Outten v. Wilmington Tr. Corp.*,
281 F.R.D. 193 (D. Del. 2012) ............................................................................................7

*Owen-Brooks, et al. v. DISH Network Corporation*,
Case No. 1:23-cv01168.........................................................................................................2

ii

*Peace Officers' Annuity and Benefit Fund of Georgia et al. v. DaVita Inc. et al.,*
       Case No. 1:17-cv-00304-WJM-NRN (D. Colo.) ...................................................................11

*SEBAC v. Rowland*,
       No. 3:03-cv-221 (D. Conn.)........................................................................................8

*SELCO Community Credit Union v. Noodles & Company Eyeglasses,*
       1:16CV02247 DKT No, 44 (D. Col.) ....................................................................1

*Spencer v. Hartford Financial Services Group, Inc.*,
       No. 05-cv-1681 (D. Conn.) ......................................................................................9

*State of Connecticut v. Philip Morris, Inc., et al.*,
       No. X02-CV-960148414S ........................................................................................8

*Turley v. DISH Network L.L.C.*,
       Case No. 1:23-cv-01346 ..........................................................................................2

*Shump v. Balka*,
       574 F.2d 1341 (10th Cir. 1978) ..............................................................................2

*Underwood et al. v. Coinbase Global, Inc.*,
       No. 21-cv-8353 (S.D.N.Y.).......................................................................................9

*Vest v. DISH Network Corporation*,
       No. 1:23-cv-01462 ...................................................................................................2

*Wilson, et al. v. Walmart Inc. et al.*,
       No. 3:21-cv-82 (E.D. Ark.).....................................................................................10

Statutes and other authorities:

Fed. R. Civ. P. 23......................................................................................................4

Fed. R. Civ. P. 23(g)(1)(A) ..............................................................................5, 6, 7, 11

Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv) ................................................................................5

Fed. R. Civ. P. 23(g)(1)(B) .....................................................................................6, 12

Fed. R. Civ. P. 23(g)(3)..........................................................................................1, 4

Fed. R. Civ. P. 23(g)(4)..............................................................................................5

Fed. R. Civ. P. 42(a) ..............................................................................................1, 2

Charles A. Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 2383 (2d ed. 1994) ........................................................2

Bolch Judicial Institute, Duke Law School,
    *Guidelines and Best Practices For Large and Mass-Tort MDLs*,
    (2d ed., Sept. 2018) ........................................................................................................12

*Manual for Complex Litigation*,
    § 21.11 (4th ed. 2004) ................................................................................................5, 13

Plaintiff Ritha Fulmore moves the Court to: (1) consolidate the class actions pending against Defendants Dish Network, LLC and Dish Network Corporation  (collectively, the "Defendants") in this District, including any and all subsequently-filed related actions, or cases filed involving similar facts or claims, pursuant to Fed. R. Civ. P. 42(a); (2) appoint Silver Golub & Teitell LLP ("SGT") as Interim Co-Lead Class Counsel  and Shuman, Glenn & Stecker ("SGS") at Liaison Counsel pursuant to Fed. R. Civ. P. 23(g)(3); and (3) to set a schedule for consolidated plaintiffs to file their Consolidated Complaint and for Defendants to respond.

**D.C.COLO.LCIVR 7.1 CERTIFICATION**

Pursuant to D.C.Colo.LCivR 7.1.A, counsel for the plaintiff Ritha Fulmore conferred with counsel for all parties (plaintiffs and defendants) in each of the above-captioned actions which plaintiff is seeking to consolidate. Undersigned counsel report that all parties agreed to consolidation. Counsel for plaintiffs that moved for appointment as interim lead counsel (and their leadership slate) on June 23, 2023 oppose the appointment of SGT and SGS as Interim Co-Lead and Liaison Counsel. Counsel for defendants take no position on either the appointment of SGT and SGS or the proposed briefing schedule.

## I.    **INTRODUCTION**

A group of 13 law firms has asked this Court to appoint three Interim co-lead counsel and a five-member executive committee, with the apparent support of four other law firm – who will serve as "counsel for the class" (the "Group Movants")[1] in order to "provide efficiencies to the parties and the Court" and "avoid uncertainty and confusion regarding who may speak for the

---

[1] The Group Movants did not move to consolidate the Fulmore action, despite it having been filed days before their motion.  Nevertheless, Plaintiff Fulmore moves to consolidate all pending and future filed actions and moves in this action for the Court's convenience. In fact, immediately upon becoming aware of the Group Movant's motion, SGT and SGS reached out to all parties in compliance with Local Rule 7.1 and then immediately filed this motion once they had received all parties' position on the relief requested herein.

putative Class." Movant Groups brief at 6.  Of course, the proposed leadership structure does the opposite. While courts often favor private ordering, this Court should not bless the disorder that the Group Movants propose. See *SELCO Community Credit Union v. Noodles & Company Eyeglasses,* 1:16CV02247 DKT No, 44 (D. Col.) (denying a similar leadership structure with at least one of the Movant Group's proposed interim lead counsel and asking "why so many law firms and lawyers, spread out over several cities, are needed to prosecute this case, and how with that structure the case can be prosecuted efficiently[?]")

Instead, the Court should act swiftly and appoint SGT as interim lead counsel and SGS as Liaison counsel, who as counsel to protect the interest of the Class. As explained below, SGT meet each of Rule 23(g)(3)'s requirements: they have done the work needed to prosecute this action and have the experience required to do so; their proposed lean leadership structure also benefits from being extremely efficient, having only 2 firms, and will avoid waste or duplication of effort; and given their size, resources and experience, and SGT and SGS can cover any need that could arise for the Class without duplication, or unnecessary expense typically generated by the bloated leadership structures that appear in most data breach cases.

II.    **ARGUMENT**

A.    **The Related Actions[2] Should Be Consolidated**

Federal Rule of Civil Procedure 42(a) allows for consolidation of cases involving common issues of law or fact as a matter of convenience and economy in judicial administration" Fed. R. Civ. P.

---

[2] The related actions *are Owen-Brooks, et al. v. DISH Network Corporation*, Case No. 1:23-cv01168*, Clark v. DISH Network L.L.C.*, Case No. 1:23-cv-01315, *Cruse v. DISH Network LLC, et al.,* Case No. 1:23-cv-01319, *Turley v. DISH Network L.L.C.*, Case No. 1:23-cv-01346, *Ellerbrock v. DISH Network Corporation*, Case No. 1:23-cv-01372, *Jenkins v. DISH Network*, LLC, Case No. 1:23-cv-01387, *Cardenas v. DISH Network L.L.C.*, Case No. 1:23-cv-01405, *Garza v. DISH Network, LLC*, No. 1:23-cv-01458, and *Vest v. DISH Network Corporation*, No. 1:23-cv-01462.

42(a)). The Court has broad discretion to decide whether to consolidate matters. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978). Further, "[t]he consent of the parties is not required by Rule 42(a) for consolidation." Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2383 (2d ed. 1994). When deciding whether to consolidate the actions, "the court must weigh the saving of time and effort that would result from consolidation against any inconvenience, expense, or delay that it might cause." *Id*. "[D]istrict courts generally take a favorable view of consolidation." *Id.* at § 2383.

Here the Related Actions should be consolidated. Consolidation would save time and effort, as it would avoid duplicative motion practice and discovery. The actions raise the same common questions of law and arise from the same set of facts surrounding common Defendants' alleged failure to properly secure, safeguard, and protect the PII of Nelnet student loan borrowers in the same Data Breach. The Related Actions will involve substantially the same discovery. Consolidation would add efficiency and consistency in judicial rulings and would reduce delay and costs. *See Breaux v. Am. Family Mut. Ins. Co*., 220 F.R.D. 366, 367 (D. Colo. 2004).

Indeed, if not consolidated, the Related Actions would result in virtually identical discovery requests, duplicative motion practice, and would cause an unnecessary drain on judicial resources. This is still true despite minor variations in class definitions and state-specific causes of actions. As explained in *Kaplan v. 21st Century Oncology Holdings*, a data breach case, where the court granted a motion to consolidate various class complaints:

> [T]he Undersigned first finds that there is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately. As stated above, all of the cases are pled as class actions and all of the cases allege a negligence claim. The majority of the cases share other substantive claims as well…
>
> …

3

> To be sure, the complaints in some of the cases assert claims that are not raised in the other related cases. Moreover, the putative class definitions vary among the related cases. Consolidation does, therefore, carry with it some risk of prejudice and also the possibility of confusion based upon these variations. The Undersigned finds, nevertheless, that the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. In other words, with thirteen separate cases pending, the Undersigned finds that the risk of inconsistent adjudications of common factual and legal issues far outweighs any specific risks of prejudice and possible confusion that may be caused by variations in claims and class definitions. Moreover, the nuances in claims and putative class definitions can likely be addressed in the consolidated amended complaint through the use of putative subclasses once the request to appoint interim class counsel has been addressed.

*Kaplan v. 21st Century Oncology Holdings, Inc.*, No. 2:16-cv-210, 2016 WL 9383330, at *2-3 (M.D. Fla. July 21, 2016), *report and recommendation adopted*, No. 2:16-cv-210, 2016 WL 4204781 (M.D. Fla. Aug. 10, 2016) (internal citations omitted). To this end, courts have recognized that consolidation is appropriate in data breach cases where two or more cases arise from the same occurrence. *See, e.g., Id.*, 2016 WL 9383330, at *2 ("all of the cases appear to arise from the same alleged data breach. Additionally, all of the cases are pled as class actions with class allegations under Fed. R. Civ. P. 23, and all of the cases share at least one similar substantive claim: negligence. Moreover, all cases were filed against a common Defendant"); *In re Rutter's Inc. Data Security Breach Litigation*, No. 1:20-cv-382, ECF No. 12 (M.D Pa. Mar. 26, 2020) (consolidating two data breach class actions), ECF No. 17 (April 3, 2020) (later consolidating two additional actions that were filed into the consolidated action).

In addition, to ensure continued judicial efficiency, the Court should order that any future actions that are filed, transferred, or removed to this Court based on the same or similar facts and circumstances be consolidated with this case. *In re Rutter's Inc. Data Security Breach Litigation*, ECF No. 12 (consolidating "any future related actions, under the docket number of this, first

4

filed case"), ECF No. 17 ("the Clerk of Court is directed to mark as "Related" and to consolidate with this action all future actions that are filed in, transferred to, or removed to this District that relate to the same data breach at issue in this case").

Finally, Defendants will suffer no prejudice by litigating one consolidated action rather than these 10—or potentially more—separate actions, and as a result, consolidation.

**B.      The Court Should Appoint Interim Co-Lead Class Counsel**

**1.      Legal Standard Under Rule 23(g)(3)**

Federal Rule of Civil Procedure 23(g)(3) provides "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The appointment of leadership here is appropriate (*and necessary*) in light of the large number of cases (10) involving overlapping claims and issues. *See Manual for Complex Litigation*, § 21.11 at 246 (4th ed. 2004) ("*Manual*") (when "there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. *In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during* precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and *negotiating settlement*.").  Given the number of lawyers involved in the Related Actions, the Court should appoint a single Interim Co-Lead Class Counsel, which will clarify the responsibilities among counsel for protecting the interests of the Class, and who will be able speak with one legitimate, unified voice for all Plaintiffs when negotiating with Defendants, or making decisions in prosecuting the case.

5

Federal Rule of Civil Procedure 23(g)(4) mandates that class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). While, Federal Rule of Civil Procedure 23(g)(3) provides no criteria for selecting interim counsel, however, Federal Rule of Civil Procedure 23(g)(1)(A), which addresses the appointment of class counsel, provides in appointing class counsel, the Court must consider:

> (i)   the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i) – (iv).

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "When appointing interim class counsel under Rule 23(g)(3), courts generally look to the same factors used in determining the adequacy of class counsel set forth in Rule 23(g)(1)(A)." *Chen v. Target Corp.*, No. 21-cv-1247 (DWF) (DTS), 2021 WL 6063632, at *2 (D. Minn. Dec. 22, 2021); *see also In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015) ("It is generally accepted that the same considerations that govern the appointment of class counsel once a class is certified govern the designation of interim class counsel before certification."). Thus, the same factors apply here for the Court's analysis.

As discussed below, each of the relevant Rule 23(g)(1)(A) factors demonstrate that proposed Interim Counsel SGT and Liaison Counsel SGS will be able to fairly and adequately represent the interests of the Class in the consolidated action.

### i. SGT Performed Substantial Work in Investigating this Action.

Under the first Rule 23(g)(1)(A) factor, SGT has committed appropriate, yet substantial, time and resources to investigating and researching the potential legal theories and claims at issue (including multiple state consumer protection statutes) and researching and reviewing information relating to the factual underpinnings of the Data Breach and this litigation. SGT is familiar with the facts and legal issues in this matter and intends to continue their pursuit of the claims on behalf of Plaintiffs and the Class.

SGT continues to perform substantial work that has been (and will be) valuable to the Class as the case moves forward. This includes, but is not limited to: (1) reviewing consumer communications concerning the Data Breach; (2) fielding outreach from impacted Dish employees and Class Members; (3) investigating the scope of the Data Breach, and Defendants' public response regarding the same; (4) researching additional potential claims arising from the Data Breach and defenses thereto; and (5) using this research to begin preparing a detailed, Consolidated Complaint.

SGT has conducted all of the work necessary to aggressively and efficiently prosecute this litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of all necessary costs and expenses, including expert costs) necessary to aggressively litigate the claims on behalf Plaintiffs and the Class, in order to reach the best possible result, not just the quickest.

7

ii.      **SGT is Knowledgeable and Experienced in Leading and Successfully Resolving Complex Consumer Class Actions, Including Data Breach Litigation**

SGT more than satisfy the second and third Rule 23(g)(1)(A) factors. SGT have the requisite knowledge and experience in Data breach cases, which present unique and novel issues of fact and law that are always evolving. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases… are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts."); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Because data breach cases require an understanding of the technical issues of data hacking, data privacy measures, and industry standards, appointing interim co-lead class counsel experienced in such complex class action litigation, including data breach and privacy litigation and related issues, is in the best interest of the Class. *See, e.g., Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."); *In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) ("The consideration that the Court finds to be most persuasive, however, relates to Co-Lead Counsel's experience in, and knowledge of, the applicable law in this field.").

Here, SGT, and the attorneys who will lead the litigation have extensive experience leading consumer class actions, including those involving data breach and data privacy issues against large corporate defendants such as Apple, Google, and Nelnet. SGT has 22 attorneys (not

including support staff), and is supported by well qualified and experienced local counsel. SGT's

qualifications are further detailed in the accompanying firm resume attached hereto as Exhibit 1

(SGT Firm Resume).

## Silver Golub & Teitell LLP

SGT's class action and complex litigation practice represents consumers and investors in

data breach, data privacy, consumer protection, securities, antitrust, and environmental matters,

among others. SGT undertook its first class action in 1983 successfully representing a

nationwide class of 40,000 Xerox Corp. pensioners and, in the 1990's served as private lead

counsel for the State of Connecticut in its sovereign enforcement action against the American

tobacco industry, recovering $3.9 billion for Connecticut, with $370 million coming via special

award from a panel of former Attorneys General in recognition of the contribution of

Connecticut's SGT-led legal team in helping to achieve the national settlement. *See State of

Connecticut v. Philip Morris, Inc., et al.*, No. X02-CV-960148414S. And, in 2016 SGT obtained

a $250+ million settlement on behalf of public sector union employees fired in violation of their

First Amendment rights of free speech and association. *See SEBAC v. Rowland*, No. 3:03-cv-221

(D. Conn.).

More recently, SGT achieved extraordinary results on behalf of institutional and

individual investors who were defrauded by Allianz Global Investors U.S. LLC ("AllianzGI")

via knowingly representations made by AllianzGI regarding the risk profile of a complex options

strategy used in a series of investment vehicles, including private hedge funds and publicly-

traded mutual funds. SGT served as court-appointed co-class counsel for the putative private

hedge fund investors in *In re Allianz Global Investors Structured Alpha Litigation*, No. 20-cv-

7154 (S.D.N.Y.). After AllianzGI's motion to dismiss was denied in substantial part, AllianzGI

9

settled with SGT's clients and other investors on individual bases. SGT then represented

investors in the AllianzGI mutual funds in *Jackson v. Allianz Global Investors*, Index No.

651233/2021 (N.Y.S.), and on November 1, 2022, announced a $145 million settlement on their

behalf. On December 6, 2022, Justice Andrew Borrok preliminarily approved the settlement.

Other select representative matters in which SGT served or is serving in leadership roles

include:

- *In re Data Security Cases Against Nelnet Servicing, LLC,* **4:22-cv-03267-JMG-CRZ (D. Neb.):** Currently serving as court appointed interim lead counsel for a class of 2.5 million student loan borrowers in a data breach case against Nebraska-based student loan servicing company that serves as a student loan servicer and web portal provider for EdFinancial and the Oklahoma Student Loan Authority (OSLA, alleging that class members' social security numbers, full names, physical addresses, email addresses, and phone numbers—had been exposed as a result of unauthorized access to Nelnet's computer systems.

- *Spencer v. Hartford Financial Services Group, Inc.*, **No. 05-cv-1681 (D. Conn.):** SGT served as court-appointed co-lead counsel and obtained a $72.5 million cash settlement on the eve of trial for two certified subclasses of approximately 22,000 owners of structured settlement annuities in a nationwide class action against Hartford Financial Services Group, Inc and its affiliates.

- *YouTube Child Tracking Litigation*: SGT is lead counsel for a proposed class of children suing Google ("Google") and YouTube LLC ("YouTube") and children's entertainment companies that operated YouTube channels for allegedly illegally collecting, storing, analyzing children's data and using it to show them and other children advertisements calculated to influence their behavior. In December 2022, SGT obtained a landmark unanimous decision from a three-judge panel Ninth Circuit Court of Appeals panel holding that state law remedies for violations of state law overlapping with COPPA violations were not preempted, reversing the decision of the District Court, who had twice ruled that SGT's clients' claims were pre-empted by COPPA. The opinion can be read here. The case is *Hubbard et al. v. Google et al.*, 5:19-cv-07016 (N.D. Cal.) and is pending in the United States District Court for the Northern District of California before Judge Beth L. Freeman.

- *Westminster, Mass. PFAS Contamination Litigation*. SGT currently serves as court-appointed lead counsel on behalf of a putative class of 300+ Massachusetts homeowners whose private water wells and topsoil have been contaminated with dangerous levels of PFAS or "forever" chemicals as a result of dumping activity carried out by local area paper mills. The contamination was discovered in February 2022 when a concerned private citizen had his private drinking well water tested for PFAS. The results returned

10

were the highest ever recorded on private property in Massachusetts. The case is *Ryan et al. v. Greif, Inc. et al.*, No. 4:22-cv-40089 (D. Mass) and is currently pending before United States Judge Margaret R. Guzman of the District of Massachusetts.

- ***In re EpiPen Direct Purchaser Litigation*, No. 20-cv-827 (D. Minn.):** SGT is part of a committee with court-appointed interim co-lead counsel representing direct purchaser plaintiff drug wholesalers Rochester Drug Co-Operative, Inc. ("Rochester Co-op") and Dakota Drug, Inc. ("Dakota Drug") in a proposed class action alleging that brand-name and generic EpiPen manufacturers and a group of pharmacy benefit managers ("PBMs") conspired to maintain supracompetitive prices for brand-name and generic EpiPens.

- ***In re Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, No. 21-cv-1230 (W.D. Pa.):** SGT filed the first class action in the United States arising out of Philips' recall of CPAP, BiPAP, and mechanical ventilator devices due to the presence of a dangerous PE-PUR Foam that could cause users to suffer adverse health effects. SGT Partner Ian W. Sloss currently serves in a court-appointed leadership committee role in the MDL pending in the Western District of Pennsylvania.

### Shuman, Glenn and Stecker ("SGS")

Similarly, Shuman, Glenn & Stecker ("SGS"), proposed liaison counsel, is highly experienced in litigating class action lawsuits and other complex civil cases in this District. For example, SGS was appointed liaison counsel in nine coordinated complex securities class actions brought against various Oppenheimer-related entities based upon alleged violations of the federal securities laws. *See In re Oppenheimer Fixed Income Fund Actions,* Case Nos. 09-cv-386-JLK-KMT (D. Colo.); and *In re Oppenheimer Rochester Funds Group Securities Litigation*, Case No. 09-md-2063-JLK-KMT (D. Colo.). The two *Oppenheimer*-related actions settled for $100 million and $140 million, respectively. SGS also served as liaison counsel in *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.). The *Qwest* litigation culminated in a $445 million recovery for the class which is the largest securities recovery in the Tenth Circuit and also included a mechanism that allowed class members to share an additional $250 million recovered by the Securities and Exchange Commission. Recently, SGS was appointed co-lead counsel in class litigation against DaVita, Inc. based upon alleged violations of federal securities

11

laws. The *DaVita* litigation settled for $135 million. *See Peace Officers' Annuity and Benefit Fund of Georgia et al. v. DaVita Inc. et al.,* Case No. 1:17-cv-00304-WJM-NRN (D. Colo.). These cases represent just some of the examples of the success SGS has achieved in this District. *See e.g.,* Exhibit 2, SGS Firm Resume.

These examples ultimately demonstrate that SGT and SGS, are well-qualified to serve as Interim Co-Lead Class Counsel and Liaison Counsel in the consolidated action.

### iii.    SGT is Committed to Devoting Significant Resources and Representing and Advancing the Interests of the Class

As to the fourth, Rule 23(g)(1)(A) factor, SGT is ready, willing, and able to expend the necessary resources to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in these cases. Far from a fly by night operation or a 'new kid on the block,' the firm is well capitalized and has existed in their current firm structure for decades, with minimal attorney departures. SGT has years of experience prosecuting and self-funding complex class action litigation, including actions against some of the largest companies in the world. SGT has advanced millions of dollars to fund expenses in several of its cases, demonstrating a commitment to providing the resources and staffing needed to successfully prosecute class actions. SGT are also willing to advance all costs to prosecute this action and see it through completion, including advancing costs for document hosting, expert witnesses (both for liability and damages if necessary), and for trial.

SGT and SGS's resumes (which are attached hereto as Exs. 1 and 2) demonstrate their lengthy records of success leading complex class action cases. The experience here will be no different. In sum, SGT and SGS are committed to pursuing the best interests of Plaintiffs and the Class in an efficient manner. They understand the time and resources necessary to pursue this action to a successful resolution. Their firms have already made significant investments of

resources and time into the prosecution of these claims.

### iv.    Other Matters Pertinent to SGT's and SG's Ability to Fairly and Adequately Represent the Interests of the Class

#### a.  *SGT and SGS Propose a Lean, Inclusive Structure*

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). SGT and SGS propose a lean structure—comprised of just 2 law firms—that avoids the "repeat player dynamic" often seen in large class actions, while simultaneously putting forth highly skilled attorneys with significant experience and the resources necessary to vigorously litigate the actions. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices For Large and Mass-Tort MDLs*, at 37, 46 (2d ed., Sept. 2018) ("[T]he strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued…Research shows that having a mix of experienced and new players enhances creativity and innovation, leads to better decision making and problem solving, and promotes discussion of novel concepts raised by those who historically have not been in leadership").[3] Leadership roles should be made available to *newer lawyers*, *In re Robinhood Outage Litig.*, No. 20-cv-1626 (JD), 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020), including  attorneys like Mr. Levis and Mr. Sloss who are both under 40 years of age.

#### b.  *SGT and SGS Will Promote Efficiency and Expedite the Litigation*

Often the greatest challenge in appointing a leadership structure is appointing counsel

---

[3] *Available at*
https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch.

who will work cooperatively and collaboratively. Here, SGT is confident they will be able to

implement strategies to ensure the efficient and economical litigation of this matter. SGT will

recommend the use of proven methodologies from prior cases to monitor billing, control costs,

review assignments, and avoid duplication of efforts of Plaintiffs' counsel. Both firms would be

required to maintain contemporaneous timekeeping records recorded in one-tenths of an hour

and report detailed monthly timekeeping records for review by the leadership structure.

Additionally, SGT will also appropriately staff this action and communicate effectively to ensure

that multiple attorneys and/or firms are not performing duplicative or unnecessary work. With

the Court's approval, SGT will also encourage the use of Zoom and other videoconferencing

options for hearings and depositions. Such applications have been used successfully during the

COVID-19 pandemic and the continued use of remote meetings, when feasible, will be an

invaluable cost-saving measure.

Additionally, SGT urges the Court to avoid appointing and oversized leadership structure

like the one proposed by the Group Movants, to guarantee the consolidated action will only be

litigated by the firms of the Court's choosing to efficiently litigate on the Class's behalf. *See

Manual* §10.221 (explaining "[c]ommittees of counsel . . . sometimes lead to substantially

increases costs, and . . . should try to avoid unnecessary duplication of effort and control fees and

expenses."). All too often in data breach cases of this size, in order to garner support for a lead

interim class counsel application, attorneys agree to bloated, oversized executive or steering

committees, that come with the implicit promise of work to those supporting firms, which results

in duplicative and unnecessary work product, unnecessary billing, and inflated lodestars. Here,

the application from the Group Movants includes not only an eight firm leadership structure, but

four other firms with undefined roles as counsel for the class. Ultimately, these inefficient

14

structures disadvantage the Class in favor of creating unnecessary leadership positions that can hamstring interim class counsel who are forced to prioritize doling out assignments to fulfill promises over what is best for the litigation. SGT has not promised any work or position to any other counsel—the consolidated action will be litigated *only* by the SGT and SGS attorney. See *In re Data Security Cases Against Nelnet Servicing*, LLC  4:22-cv-03267-JMG-CRZ (D. Neb) (appointing SGT over competing applications from many of the firms that comprise the Group Movants because "the proposed leadership structure of three larger firms collaborating as the co-lead counsel is not in the best interests of the putative class because it will undoubtedly lead to expensive and duplicative efforts among the attorney group").

## C.  The Court Should Set a Briefing Schedule

Plaintiffs support an expeditious and efficient briefing schedule for the consolidated action. Therefore, subject to the Court's approval, the Plaintiffs propose that Dish shall have forty-five (45) days to respond to the Consolidated Complaint, and that if Dish's response is a motion to dismiss and/or a motion to compel arbitration, Plaintiffs shall have thirty (30) days to file their opposition brief, and Dish shall have twenty-one (21) days to file a reply brief."

## III.  CONCLUSION

Based upon the foregoing, Plaintiffs respectfully ask the Court to grant their motion and enter an Order: (1) consolidating the aforementioned Related Actions; (2) appointing Silver Golub & Teitell LLP as Interim Co-Lead Class Counsel and Shuman, Glenn & Stecker as Liaison Counsel; and (3) setting a briefing schedule for filing a Consolidated Complaint and motions to dismiss.

Dated: July 13, 2023

Respectfully submitted,

*/s/ Rusty Glenn*
**SHUMAN, GLENN & STECKER**
600 17th Street, Suite 2800 South
Denver, CO 80202
Toll-Free: 866-569-4531
Tel: 303-861-3003
Fax: 303-536-7849
rusty@shumanlawfirm.com


Ian W. Sloss
**SILVER GOLUB & TEITELL LLP**
One Landmark Square
Fifteenth Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com

*Counsel for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2023, a copy of this memorandum of law was filed

electronically with the United States District Court for the District of Colorado and served on all

counsel of record through the CM/ECF system.

*/s/ Rusty Glenn*
Rusty Glenn