## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-01168-RMR-SBP          Consolidated Action

*In re DISH Network Data Security Incident Litigation*

## DEFENDANTS DISH NETWORK L.L.C.'S AND DISH NETWORK CORPORATION'S
## MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................1

II.   FACTUAL BACKGROUND............................................................................................1

III.  LEGAL STANDARD.......................................................................................................2

IV.   ARGUMENT....................................................................................................................3

      A.    Plaintiffs Lack Article III Standing.........................................................................3

            1.    All Plaintiffs Fail To Allege Sufficient Traceable Injury ...........................3

                  a.    Plaintiffs Fail To Allege Injury In Fact............................................4

                  b.    Plaintiffs' Allegations of Misuse Are Not Traceable to
                     DISH ...............................................................................................10

            2.    Plaintiffs Lack Standing To Seek Injunctive Relief .................................14

      B.    Plaintiffs Fail To State Substantive Claims Under Rule 12(b)(6) .........................15

            1.    Colorado State Law Applies To The Common Law Claims .....................15

            2.    Plaintiffs' Negligence Claim Fails (Count I).............................................15

            3.    FTCA and HIPAA Are Not Valid Bases For Plaintiffs' Negligence
               *Per Se* Claim (Count II) ...............................................................................17

            4.    The Claims For Breach Of Contract (Count III) And Breach Of
               Implied Contract (Count IV) Fail ..............................................................18

            5.    Plaintiffs' Claim For Unjust Enrichment Fails (Count V).........................20

            6.    The Declaratory Judgment Claim Is Duplicative (Count VI)....................20

V.    CONCLUSION...............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......................................................................20

*City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*,
403 P.3d 609 (Colo. 2017).......................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................3

*Atsepoyi v. Tandy Corp.*,
51 F. Supp. 2d 1120 (D. Colo. 1999).......................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................3

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
353 F. Supp. 3d 1070 (D. Colo. 2018).................................................................16, 17

*Blood v. Labette Cnty. Med. Ctr.*,
2022 WL 11745549 (D. Kan. Oct. 20, 2022) ................................................... *passim*

*C.C. v. Med-Data Inc.*,
2022 WL 970862 (D. Kan. Mar. 31, 2022) ...................................................... *passim*

*Canape v. Petersen*,
897 P.2d 762 (Colo. 1995).......................................................................................17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)............................................................................................. *passim*

*Cuevas v. United States*,
2018 WL 1399910 (D. Colo. Mar. 19, 2018) ..........................................................16

*Deevers v. Wing Fin. Servs., LLC*,
2023 WL 6133181 (N.D. Okla. Sept. 19, 2023).............................................. *passim*

*Del Llano v. Vivint Solar Inc.*,
2018 WL 656094 (S.D. Cal. Feb. 1, 2018) ..............................................................13

*Dolin v. Contemporary Fin. Solutions, Inc.*,
622 F. Supp. 2d 1077 (D. Colo. 2009).....................................................................15

*Echo Acceptance Corp. v. Household Retail Servs., Inc.*,
    267 F.3d 1068 (10th Cir. 2001) ....................................................................................19

*Gordon v. Chipotle Mexican Grill, Inc.*,
    2018 WL 3653173 (D. Colo. Aug. 1, 2018) ...............................................................16, 17, 18

*Gordon v. Chipotle Mexican Grill, Inc.*,
    344 F. Supp. 3d 1231 (D. Colo. 2018) ..................................................................15, 16, 17, 18

*Green v. eBay Inc.*,
    2015 WL 2066531 (E.D. La. May 4, 2015) ...........................................................................6, 8

*Hall v. Centerspace, LP*,
    2023 WL 3435100 (D. Minn. May 12, 2023) ...........................................................................9

*Irwin v. Jimmy John's Franchise, LLC*,
    175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...................................................................................19

*J.R. v. Walgreens Boots All., Inc.*,
    470 F. Supp. 3d 534 (D.S.C. 2020) ........................................................................................17

*Kimbriel v. ABB, Inc.*,
    2019 WL 4861168 (E.D.N.C. Oct. 1, 2019) ...........................................................................13

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) ...................................................................................................9

*Legg v. Leaders Life Insurance Co.*,
    574 F. Supp. 3d 985 (W.D. Okla. 2021) ........................................................................ *passim*

*Mark Masterson v. IMA Fin. Grp., Inc.*,
    2023 WL 8647157 (D. Kan. Dec. 14, 2023) ................................................................... *passim*

*McCombs v. Delta Grp. Elecs., Inc.*,
    2023 WL 3934666 (D.N.M. June 9, 2023) ............................................................4, 5, 6, 11

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ...............................................................................................3

*Ruskiewicz v. Oklahoma City Univ.*,
    2023 WL 6471716 (W.D. Okla. Oct. 4, 2023) ......................................................................4, 5

*Sample v. City of Sheridan*,
    2012 WL 1247223 (D. Colo. Apr. 13, 2012) ..........................................................................19

*Santa Fe All. For Pub. Health & Safety v. City of Santa Fe, New Mexico*,
    993 F.3d 802 (10th Cir. 2021) ..................................................................................................4

*Scott v. Matlack, Inc.*,
    39 P.3d 1160 (Colo. 2002)................................................................................................17

*SELCO Cmty. Credit Union v. Noodles & Co.*,
    267 F. Supp. 3d 1288 (D. Colo. 2017)........................................................................15, 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)......................................................................................................3, 4

*Spring Creek Exploration & Prod. Co. v. Hess Bakken Inv., II, LLC*,
    887 F.3d 1003 (10th Cir. 2018) ........................................................................................18

*State Farm Fire & Cas. Co. v. Mhoon*,
    31 F.3d 979 (10th Cir. 1994) ...........................................................................................20

*Storm v. Paytime, Inc.*,
    90 F. Supp. 3d 359 (M.D. Pa. 2015) .................................................................................5

*In re SuperValu, Inc.*,
    870 F.3d 763 (8th Cir. 2017) .............................................................................................6

*Torres v. Wendy's Co.*,
    195 F. Supp. 3d 1278 (M.D. Fla. 2016)........................................................................8, 12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...............................................................................................3, 5, 14

*Trinity Universal Ins. Co. v. Streza*,
    8 P.3d 613 (Colo. 2000)...................................................................................................17

*Trujillo v. City of Colorado Springs*,
    2008 WL 511890 (D. Colo. Feb. 22, 2008) .....................................................................18

*Williams v. Cont'l Airlines, Inc.*,
    943 P.2d 10 (Colo. 1996).................................................................................................16

## Statutes & Rules

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 3

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 3, 15

## Other Authorities

Restatement (Second) of Conflict of Laws ...........................................................................15

## I.      **INTRODUCTION**

Defendants DISH Network L.L.C. and DISH Network Corporation (collectively "DISH") respectfully move to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] This case arises out of a criminal ransomware attack perpetrated against DISH in late February 2023.  DISH is one of many recent victims of such criminal activity, which, in 2023 alone, affected numerous companies, from small businesses to large corporations, and even state and federal government agencies.  These cyberattacks have grown more common due to the sophistication of criminal actors, despite increased focus on and improvements in cybersecurity by businesses.  *See*, *e.g.*, *Legg v. Leaders Life Insurance Co.*, 574 F. Supp. 3d 985, 989 (W.D. Okla. 2021) (noting that data breaches from cyberattacks "are becoming ubiquitous in our increasingly digital society . . ."). As a result of this reality, courts in this Circuit and elsewhere have examined data breach plaintiffs' standing carefully and have come to regularly dismiss claims, such as those brought here, that are based on the mere fact that a breach occurred, but where no actual misuse of the breached data has occurred or is fairly traceable to the defendant.  Plaintiffs' allegations in the Complaint fail to establish concrete injury or traceability to DISH for Article III standing and also fail to state claims for relief under the causes of action that Plaintiffs assert.  The Complaint should be dismissed.

## II.      **FACTUAL BACKGROUND**

DISH is, among other things, a satellite television provider with its headquarters in Englewood, Colorado.  (Compl. ¶¶ 27, 29.)  On February 23, 2023, DISH was the victim of a

---

[1] The Parties met and conferred regarding this Motion.  On January 16, 2024, Plaintiffs filed an amended complaint.  (ECF No. 40.)  This Motion addresses deficiencies the amendment did not remedy.  DISH requests a hearing at the Court's earliest convenience.

cyberattack, perpetrated by a ransomware actor, Black Basta (the "Incident").  (*Id.* ¶ 39.)  DISH immediately activated its incident response and business continuity plans to contain, assess and remediate the situation, including notifying law enforcement.  (*Id.*; Request for Judicial Notice Ex. A.[2])  In mid-May, DISH notified all current and former employees, and their benefit plan beneficiaries, that their personal information had been accessed in the Incident.  (Compl. ¶ 41; Ex. A.)  DISH also confirmed that it had determined that customer databases were not accessed in the Incident.  (Ex. A.)  DISH informed affected individuals that the information in the accessed files may have included the individual's name, payment card information, financial account number, health insurance information, medical information, COVID-19 vaccination status, and Social Security Number.  (*Id.*; Compl. ¶¶ 46, 51, 56, 61, 66, 72, 78, 84, 90, 96, 101.)  DISH also offered identity protection services to affected individuals.  (Compl. ¶ 118.)

Plaintiffs consist of 11 named plaintiffs who seek to represent three nationwide classes of current employees, former employees, and family and minors.  (*Id.* ¶¶ 168-70.)  Plaintiffs each received a notice informing them of the information that may have been accessed in the Incident. (*Id.* ¶¶ 46, 51, 56, 61, 66, 72, 78, 84, 90, 96, 101.)  Plaintiffs allege a variety of harms, including hypothetical risk of future misuse of their information, lost time and money monitoring accounts, fear and anxiety, and attempted identity theft or unauthorized use of data.  A chart of Plaintiffs' alleged harms is in Appendix 1.  Plaintiffs assert six causes of action for negligence, negligence *per se*, breach of contract and implied contract, unjust enrichment, and declaratory judgment.

### III.    LEGAL STANDARD

"For there to be a case or controversy under Article III, the plaintiff must have a personal

---

[2] All exhibits referenced herein are exhibits to DISH's Request For Judicial Notice.

stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). The "irreducible constitutional minimum" of standing requires that the plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs bear the burden of establishing the elements of standing, and must clearly allege facts demonstrating each element. *Id.* Plaintiffs' standing is subject to challenge under Rule 12(b)(1).

To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The scope of the allegations may not be "'so general that they encompass a wide swath of conduct, much of it innocent'" or else the plaintiff has "'not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570). A plaintiff may not rely on labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

IV.    **ARGUMENT**

   A.    **Plaintiffs Lack Article III Standing**

      1.    **All Plaintiffs Fail To Allege Sufficient Traceable Injury**

Plaintiffs do not meet their burden of pleading the key elements of standing: that they "(1) suffered an injury in fact, (2) that is fairly traceable" to the challenged conduct of DISH. *Spokeo*, 578 U.S. at 338. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not

3

conjectural or hypothetical." *Id*. at 339 (internal quotation marks omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340. An imminent injury "must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). "[T]o show that an injury is 'fairly traceable' to the challenged conduct, a plaintiff must allege a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact" and "that its injury was not the result of the independent action of some third party not before the court." *Santa Fe All. For Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (internal quotation marks omitted). "A plaintiff cannot establish that an injury is 'fairly traceable' by a 'speculative chain of possibilities.'" *Blood v. Labette Cnty. Med. Ctr.*, 2022 WL 11745549, at *4 (D. Kan. Oct. 20, 2022) (*quoting Clapper*, 568 U.S. at 414).

### a.    Plaintiffs Fail To Allege Injury In Fact

Although the Tenth Circuit has not yet addressed standing in data breach litigations, "the majority of courts, including district courts in [the Tenth] [C]ircuit, have concluded that plaintiffs must allege actual misuse of [data] to demonstrate they face an imminent risk of fraud." *Deevers v. Wing Fin. Servs., LLC*, 2023 WL 6133181, at *6 (N.D. Okla. Sept. 19, 2023); *see also McCombs v. Delta Grp. Elecs., Inc.*, 2023 WL 3934666, at *4 (D.N.M. June 9, 2023) ("Without current guidance from the Tenth Circuit, other district courts in this circuit have followed the majority view concluding that a plaintiff does not suffer an injury in fact where their PII is accessed through a data breach but no direct harm results." (*citing Legg*, 574 F. Supp. 3d at 988)); *Ruskiewicz v. Oklahoma City Univ.*, 2023 WL 6471716, at *2 (W.D. Okla. Oct. 4, 2023) ("a plaintiff who merely alleges a risk of future harm from a data breach has not shown 'an actual, present injury that would support his damages claim or an imminent threat of future harm that would support his claim for injunctive relief'"

4

(*quoting Legg*, 574 F. Supp. 3d at 995)); *Blood*, 2022 WL 11745549, at \*7 ("without actual misuse of stolen information, plaintiffs lack standing to bring claims because their injuries are not concrete, particularized, or imminent" (*citing C.C. v. Med-Data Inc.*, 2022 WL 970862, at \*4 (D. Kan. Mar. 31, 2022)).  Plaintiffs allege various categories of harm insufficient to establish injury in fact.

  *(1)  Future Risk Of Harm*.  All Plaintiffs allege harm from "a substantial and imminent risk of fraud and identity theft."  But "the risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim."  *TransUnion*, 594 U.S. at 441.  The alleged possibility that information from a data breach will be used by an unknown third party at an unknown time in the future to commit fraud or identity theft "falls well short of what is required under binding precedent."  *McCombs*, 2023 WL 3934666, at \*5; *Legg*, 574 F. Supp. 3d at 994 (*citing Clapper*, 568 U.S. at 409); *see also Med-Data*, 2022 WL 970862, at \*8 ("plaintiff's theory of future injury in the form of identity fraud, identity theft, or medical fraud 'is too speculative to satisfy the well-established requirement that the threatened injury must be 'certainly impending'" (*quoting Clapper*, 568 U.S. at 402)); *Ruskiewicz*, 2023 WL 6471716, at \*3 ("At best, Plaintiff's allegations permit an 'inference that at some unknown time in the future, she or some of the putative class members may be the victim of identity theft or fraud.'" (*quoting Legg*, 574 F. Supp. 3d at 994)).  At this point, it has been nearly a year since the Incident, with no alleged actual misuse of these Plaintiffs' data, making their fear of imminent harm less reasonable with each passing day.  *See*, *e.g.*, *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 367 (M.D. Pa. 2015) (no imminent injury alleged where lapse of almost a year since data breach with no actual identity theft undermines "the notion that identity theft would happen in the near future").  Plaintiffs' alleged fear of "imminent" harm is also contradicted by their claim that "there may be a substantial lag

time – measured in years . . . ." (Compl. ¶ 151.)  Plaintiffs cannot have it both ways.  *See Green v. eBay Inc.*, 2015 WL 2066531, at *5 (E.D. La. May 4, 2015) (finding no "certainly impending risk of future identity theft or identity fraud" where plaintiff alleged his data could be misused years later).  Plaintiffs' fear of hypothetical future harm is not concrete or certainly impending.

       *(2)  **Time And Money Addressing The Incident***.  Likewise, Plaintiffs' alleged time spent "addressing" the Incident is not a concrete injury where there is no imminent threat of harm.  Plaintiffs allege they have spent time "making phone calls," "reviewing, and sending emails," "monitoring [] accounts and credit report," "placing freezes on [accounts,]" and speaking with banks.  (*See*, *e.g.*, Compl. ¶¶ 47, 57, 62.)  Courts have repeatedly held that plaintiffs "cannot 'manufacture standing' simply by 'incur[ring] certain costs as a reasonable reaction to a risk of harm."  *Legg*, 574 F. Supp. 3d at 994 (*quoting Clapper*, 568 U.S. at 416).  "[W]hile it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury where there is no imminent threat of harm."  *Id*.; *see also Deevers*, 2023 WL 6133181, at *7 ("Since there exists no imminent threat of future harm, plaintiffs' efforts to mitigate fraud in the form of lost time monitoring accounts 'cannot create a concrete injury.'" (*quoting Legg*, 574 F. Supp. 3d at 994)); *Med-Data*, 2022 WL 970862, at *8 (same); *McCombs*, 2023 WL 3934666, at *6 (plaintiff's "efforts monitoring her accounts and safeguarding her PII are not a defense against a concrete or imminent threat"); *Mark Masterson v. IMA Fin. Grp., Inc.*, 2023 WL 8647157, at *6 (D. Kan. Dec. 14, 2023) (same).  Accordingly, "[b]ecause plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury."  *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (*citing Clapper*, 568 U.S. at 416).

Likewise, Plaintiffs allege that they and Class Members "may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees[.]" (Compl. ¶ 161.)  But no named Plaintiff alleges that he or she has incurred any such actual costs, nor could they given that DISH offered free identity protection services to affected individuals. (*Id*. ¶ 118.)  But even if they had, the alleged mitigation costs, like the mitigation time, cannot create a concrete injury where there is no imminent harm.  *Legg*, 574 F. Supp. 3d at 994.

*(3)*  ***Fear And Anxiety***.  Plaintiffs' general allegations of fear, anxiety, and emotional distress (Compl. ¶¶ 48, 53, 58, 69, 75, 81, 87, 93, 99, 105) fail to establish an injury in fact where Plaintiffs have not alleged any facts to support an alleged imminent risk of future harm.  *See Med-Data*, 2022 WL 970862, at *8 n.4 (without a risk of future harm, allegations of emotional distress are insufficient to confer standing); *Masterson*, 2023 WL 8647157, at *7 (same).  Plaintiffs may not "invent harms to construct standing," which reasoning "holds for [P]laintiffs' allegations of heightened fear and anxiety as well."  *Deevers*, 2023 WL 6133181, at *7; *see also Clapper*, 568 U.S. at 418 ("subjective fear of surveillance does not give rise to standing").[3]

*(4)*  ***Other General Harms***.  The Complaint generally alleges—though no Plaintiff specifically alleges—a variety of other speculative harms that do not constitute an injury in fact.

Out-of-Pocket Losses.  The Complaint's general allegation of "substantial risk of out-of-pocket fraud losses . . . ." is purely speculative.  No Plaintiff actually alleges any such loss. (Compl. ¶ 157.)  Tellingly, while Cardenas and Vest allege fraudulent charges in their accounts

---

[3] Even where Plaintiffs' alleged fear and anxiety has purportedly led to loss of sleep, panic attacks, or headaches (Compl. ¶¶ 58, 75, 81), Plaintiffs cannot manufacture standing where these harms all arise from their speculative fears of hypothetical future harm that is not certainly impending.  *See Masterson*, 2023 WL 8647157, at *7.

(*id*. ¶¶ 67, 97), they do not allege that the money was not returned or reinstated—and thus do not allege actual redressable money damages in the form of out-of-pocket losses. *See*, *e.g.*, *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1282–83 (M.D. Fla. 2016) (plaintiff who did not allege charges went unreimbursed had not alleged monetary harm from fraudulent charges); *Green*, 2015 WL 2066531, at *4 ("courts have held the injury requirement still is not satisfied if the plaintiffs were not held financially responsible for paying such charges").

Diminution In Data Value.  The Complaint also generally alleges diminution in value of Plaintiffs' private information, alleging that their information "has inherent market value in both legitimate and illegal markets" and "has been harmed and diminished due to its acquisition by cybercriminals."  (Compl. ¶ 159.)  No Plaintiff, however, specifically alleges this injury—but in any event, it is insufficient.  Courts routinely conclude that the alleged lost value of personal information is not a concrete and particularized injury.  *See*, *e.g.*, *Blood*, 2022 WL 11745549, at *6 (plaintiffs "do not allege (nor likely would they) that they tried to sell their information and couldn't or were offered less than its value"); *Legg*, 574 F. Supp. 3d at 994 (same).

Benefit Of The Bargain Damages.  Plaintiffs' alleged failure to receive what "they bargained for" also fails to create a concrete injury.  (Compl. ¶ 162.)  Plaintiffs allege that they entrusted their private information to DISH as part of the "exchange for providing their labor" and that they "accepted particular salary levels . . . conditioned upon an employment relationship that included protection" of their personal information.  (*Id*. ¶¶ 162, 243.)  Plaintiffs claim that they would not have accepted their salaries had they known of the "privacy risks they were adopting."  (*Id*. ¶ 243.)  Courts in the Tenth Circuit, however, have rejected the theory that some "indeterminate part" of a payment for goods or services was intended for data security.  *See*, *e.g.*,

8

*Med-Data*, 2022 WL 970862, at *9 (rejecting benefit of the bargain damages); *see also Legg*, 574

F. Supp. 3d at 995; *Blood*, 2022 WL 11745549, at *6.  The same result should apply to Plaintiffs'

alleged theory that some indeterminate part of their labor was intended for data security.  *See*, *e.g.*,

*Hall v. Centerspace, LP*, 2023 WL 3435100, at *7 (D. Minn. May 12, 2023) (rejecting alleged

unjust enrichment based on benefit of employment services where "[n]othing in the Complaint

suggests that [employees] provided more or more valuable employment services in exchange for

greater data protection").  Plaintiffs agreed to perform certain services in exchange for a certain

salary—they do not allege to have bargained for a guarantee of data security from third-party

criminal actors.  *See*, *e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) ("Kuhns

does not allege that Scottrade affirmatively promised that its customer data would not be hacked,

and such a promise may not be plausibly implied.").

Loss Of Privacy.  The Complaint refers to a "loss of privacy" among Plaintiffs' damages,

but no individual Plaintiff alleges this harm.  (Compl. ¶ 166.)  Plaintiffs' alleged "loss of privacy,

in and of itself, is not a concrete harm that can provide the basis for Article III standing."  *Med-Data*, 2022 WL 970862, at *10; *see also Masterson*, 2023 WL 8647157, at *3, *7 (no standing

based on "loss of privacy" where there are no allegations that the data at issue was even viewed).

Stock Price.  Dougherty alleges in passing that "[h]er and her husband's stock in the company

also decreased significantly following the Data Breach[.]"  (Compl. ¶ 52.)  She does not, however,

tie any alleged harm in this regard to any cause of action.  To the extent Plaintiffs are trying to suggest

they are entitled to recovery for the decline in stock value, which they allege is the result of "DISH's

failure to respond to and adequately ameliorate" the harm from the Incident (*id*.), they would need

to comply with the requirements of the Private Securities Litigation Reform Act of 1995 and the

9

Securities Litigation Uniform Standards Act of 1998. As they have not done so, or even tried, Dougherty's passing reference to her stock value should be disregarded.

### b.        Plaintiffs' Allegations of Misuse Are Not Traceable to DISH

Because, as set forth above, numerous courts have rejected Plaintiffs' generalized allegations of hypothetical future harm as sufficient to establish standing, Plaintiffs attempt to manufacture allegations of actual misuse of their information to demonstrate injury. But these attempts also fall short because they lack basic factual details or support, such as when or how the alleged events occurred, or what or how specific personal information was used, that would allow Plaintiffs to sufficiently trace their source to the Incident. In most cases, the only link between the Incident and the claimed misuse is that the misuse came at some point after the Incident. This is insufficient. *Masterson*, 2023 WL 8647157, at *3. To trace the origin of these instances to DISH would require a "'speculative chain of possibilities'" that cannot establish standing. *Blood*, 2022 WL 11745549, at *4 (*quoting Clapper*, 568 U.S. at 414).

*(1)  Receipt Of Spam Communications*. Multiple plaintiffs allege receiving daily spam calls, emails, and/or texts with no assertion that this is an increase from spam received before the Incident, nor do they tie the spam to the Incident. (Compl. ¶¶ 57, 74, 80, 86, 92[4], 98, 104.) Only one plaintiff alleges a purported "uptick" in calls, email, and texts. (*Id*. ¶ 47.) The other plaintiffs include no such allegations of spam communications, further undermining any traceability to DISH for those who do—and who cannot base standing on these allegations for two reasons.

First, spam communications do not constitute an injury in fact. *See Deevers*, 2023 WL

---

[4] Turley alleges she "receives multiple spam and phishing calls each day alerting her to compromises of her credit card and preapproval for loans she did not apply for" (Compl. ¶ 92)— but does not allege that credit card compromises or loan preapprovals actually took place.

6133181, at *6 n.5 ("courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact"). "Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications." *McCombs*, 2023 WL 3934666, at *6. Second, the alleged spam communications here are not fairly traceable to DISH. Plaintiffs provide no causal nexus between the Incident and the unwanted communications. Even Cook's alleged "uptick" in spam communications fails where she includes no allegations of when the "uptick" began or any quantification of the alleged uptick. *See Deevers*, 2023 WL 6133181, at *6 n.5 (failure to allege concreteness or traceability for standing where plaintiff alleged "marked increase" in spam calls but did "not allege a particular quantity or attribute an increase in calls to the specific date of the data breach"). Plaintiffs also do not allege that phone numbers were compromised in the Incident (*see* Compl. ¶ 8) or are not otherwise publicly available or have not been provided to other third parties. An increase in spam phone calls and texts "cannot be causally linked to the specific data breach here" where there is no allegation that phone numbers were among the data compromised or that they "were unlisted or otherwise protected." *Blood*, 2022 WL 11745549, at *6.

*(2) Attempted Identity Theft*. Two Plaintiffs allege instances of attempted identity theft or misuse of their data. Specifically, Clark alleges "an unknown individual *tried* to obtain unemployment benefits using his name in or around June 2023" and an "unknown individual *tried* to purchase items using his credit card" (Compl. ¶ 73 (emphases added)), and Jenkins alleges she "suffered an unknown individual *attempting* to sign up for an investment account at a company named 'M1' using her information" and "an unknown individual *attempting* to open an account at a bank called 'Aspire' using her information" (*id*. ¶ 85 (emphasis added)). First, these allegations

11

describe only *attempted* harms, and Plaintiffs allege no actual or concrete injury based on them. Second, even if these alleged instances of attempted identity theft rise to the level of injuries in fact, they are not traceable to DISH. Only Clark's first alleged misuse—attempted application for unemployment benefits—is dated; the other three instances are undated, thus lacking even the basic allegation of whether they occurred *after* the Incident. (*Id.* ¶¶ 73, 85.) And Plaintiffs do not allege what pieces of personal information were used in these attempts or that information was used to attempt the purchases or applications at issue. Jenkins only vaguely alleges that attempts were made to use "her information." This falls far short of what is required to trace harm to DISH.

*(3)    Unauthorized Charges*. A few Plaintiffs allege unauthorized charges. Cardenas alleges an "unknown individual charged $125.00 to his debit card in another state in or around August 2023" (*id.* ¶ 67), and Vest alleges she "witnessed $50 transferred from her PayPal account" (*id.* ¶ 97). These allegations are too speculative to connect these particular allegations to the Incident. They provide no details regarding the debit card and PayPal charges, including whether or not Plaintiffs were reimbursed for these unauthorized charges. *See Torres*, 195 F. Supp. 3d at 1282–83. In addition, neither Plaintiff alleges that they had provided this particular debit card or PayPal account information to DISH in the first instance. *See Masterson*, 2023 WL 8647157, at *4 (lack of traceability where "there are no allegations that [the defendant] had the information [the plaintiffs] claim was misused"). Plaintiffs' reliance on the speculative possibility that because some information was compromised, hackers and identity thieves could then access any other "email accounts and financial accounts" (Compl. ¶¶ 144-45) is "a highly attenuated chain of possibilities" that does not show a certainly impending injury and "cannot satisfy the requirement that any injury in fact must be fairly traceable" to DISH. *Clapper*, 568 U.S. at 410–11.

12

*(4)    Loan Applications And Credit Inquiries*.    Plaintiffs' allegations regarding loan applications and credit inquiries suffer the same deficiencies.  Cardenas alleges he "began receiving letters from various lending institutions claiming that unknown individuals had been applying for car loans using his name and information" (Compl. ¶ 67); Jenkins alleges she "suffered nine (9) credit inquiries on her credit report for lines of credit that she never opened" (*id*. ¶ 85); and Vest alleges "hard inquiries" on her credit report in April, June, and July 2023 (*id*. ¶ 97).  Again, these allegations do not state any actual injury.  *See*, *e.g.*, *Del Llano v. Vivint Solar Inc.*, 2018 WL 656094, at *7 (S.D. Cal. Feb. 1, 2018) (even where plaintiff alleged a hard credit inquiry affected his credit score—more than any Plaintiff here alleges—the court found "the drop in Plaintiff's credit score is not an articulated concrete harm").  They also are not traceable to DISH.  All except Vest's allegations are undated, *even as to whether they occurred before or after the Incident*, and there are no allegations that would plausibly trace these events to DISH, only a chain of speculation— particularly given that credit inquiries could be a result of countless interactions such as applying for credit.  With respect to Vest's allegation, the only link between the Incident and the alleged misuse is that credit inquiries occurred after the Incident, which is not sufficient.  *Masterson*, 2023 WL 8647157, at *4; *see also Kimbriel v. ABB, Inc.*, 2019 WL 4861168, at *3 (E.D.N.C. Oct. 1, 2019) ("Without more, the credit inquiries do not provide enough of a factual basis to plausibly show that plaintiffs' compromised data is being used or that future use of the data is 'certainly impending.'").

*(5)  "Dark Web."*  Five plaintiffs allege they were notified that their personal information "was found on the dark web."  (Compl. ¶¶ 73, 79, 85, 91, 97.)  These allegations are conclusory and insufficient—not only do they not allege an actual injury or any misuse resulting from the information allegedly appearing on the "dark web" (at most, Cruse attempts to allege injury from

13

a lost job opportunity) but they also fail to allege traceability to DISH. Clark, Cruise, and Vest only vaguely allege their "personal information" was found on the "dark web," with no details of (1) what types of information was on the dark web, or (2) whether it matched any information they allege DISH had in its possession or that was accessed in the Incident. Jenkins alleges her "email, phone number, and address" were found, but does not allege her phone number was accessed in the Incident or that DISH identified any of this information as having been breached. (*Id*. ¶¶ 8, 84-85.) Plaintiffs also fail to allege (and obviously could not credibly allege) that these pieces of information were not available from sources other than from DISH. Finally, only Vest alleges the notification happened "recently"—the others allege no timing at all. Courts in this circuit have rejected similar "dark web" allegations as insufficient where the allegations fail to state: (1) when plaintiffs were notified that their PII was on the dark web, (2) if the PII was on the dark web before the breach; (3) what PII was found, and (4) if it matches what was stolen in the breach. *See Blood*, 2022 WL 11745549, at *8. With none of this information, the "dark web" allegations are merely conclusory, unsupported by facts, and lack a "plausible connection to Defendant's actions." *Id*.

### 2. Plaintiffs Lack Standing To Seek Injunctive Relief

For the same reasons that Plaintiffs have failed to allege an injury in fact, they also lack standing to seek prospective injunctive relief—because they do not allege a risk of future harm that is "sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435; *Med-Data*, 2022 WL 970862, at *8 (no standing to seek injunctive relief where plaintiff did not show a "specified risk of future harm [that] is 'certainly impending'" (*quoting Clapper*, 568 U.S. at 409)). Plaintiffs seek an injunction to "prevent further injury in the event of another data breach at DISH" (Compl. ¶ 253) but have not alleged any facts to suggest that a future data breach is certainly impending or

14

even substantially likely—let alone an imminent risk they would be injured by it, when they have

alleged no injury from the Incident itself.

### B.    Plaintiffs Fail To State Substantive Claims Under Rule 12(b)(6)

#### 1.    Colorado State Law Applies To The Common Law Claims

"When more than one body of law may apply to a claim, the Court need not choose which

body of law to apply unless there is an outcome determinative conflict between the potentially

applicable bodies of law." *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288,

1292 (D. Colo. 2017) (internal quotation marks omitted).  When there are outcome-determinative

differences, the forum's choice of law analysis applies.  *Gordon v. Chipotle Mexican Grill, Inc.*, 344

F. Supp. 3d 1231, 1243–44 (D. Colo. 2018).  Here, Colorado law applies either way.  Applying the

Restatement (Second) of Conflict of Laws, Colorado courts have found the headquarters or the

location where the data breach occurred to be the state with the most significant contact.  *See Gordon*,

344 F. Supp. 3d at 1245; *SELCO*, 267 F. Supp. 3d at 1292 n.1.  DISH is headquartered in Colorado,

and Plaintiffs allege the computer systems implicated are based in Colorado.  (Compl. ¶¶ 27, 29.)  If

there are no outcome determinative outcomes, the forum state law applies—i.e., Colorado law.

Accordingly, DISH applies Colorado law for its Rule 12(b)(6) analysis.

#### 2.    Plaintiffs' Negligence Claim Fails (Count I)

A negligence claim requires: "(1) the existence of a legal duty to the plaintiff; (2) the defendant

breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the

injury."  *Dolin v. Contemporary Fin. Solutions, Inc.*, 622 F. Supp. 2d 1077, 1082 (D. Colo. 2009).

Plaintiffs' negligence claim fails because they allege no duty, no cognizable injury, and no causation.

***No Duty***.  Plaintiffs do not allege any cognizable duty under Colorado common law to

15

safeguard personal information, as there is no such independent common law duty in tort. *See*, *e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.*, 2018 WL 3653173, at \*16 (D. Colo. Aug. 1, 2018), *R&R adopted in relevant part*, 344 F. Supp. 3d at 1244 (no independent duty alleged to safeguard personal information); *see also Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1084 (D. Colo. 2018) ("there is no basis in Colorado statutory or common law for imposing a duty of care related to data security"). This is fatal to their negligence claim.

*No Physical Injury*. Plaintiffs' alleged injuries are insufficient to plead damages for their common law claims. Plaintiffs allege (1) future threat of injury arising from identity theft and (2) non-physical injuries such as time spent addressing the Incident and emotional harms. Under Colorado law, however, "'negligence is not actionable . . . unless it results in physical damage to persons or property;' fear of possible future injuries . . . do[es] not suffice." *Cuevas v. United States*, 2018 WL 1399910, at \*10 (D. Colo. Mar. 19, 2018) (*quoting Adams Arapaho School Dist. v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir. 1992)); *see also Williams v. Cont'l Airlines, Inc.*, 943 P.2d 10, 16 (Colo. 1996) ("simple negligence cannot provide the basis for the recovery of damages for mental or emotional suffering").[5]

*No Breach Or Causation*. Plaintiffs also fail to allege breach by DISH that proximately caused their alleged injury. Despite lengthy allegations of "DISH's security failures," these

---

[5] Certain Plaintiffs attempt to allege physical manifestations of anxiety, such as Bane (Compl. ¶ 58 (alleging "physical symptoms" such as "panic attacks")) and Clark (*id*. ¶ 75 ("chronic migraines")) but these generalized allegations do not rise to the level of physical injury. *Atsepoyi v. Tandy Corp.*, 51 F. Supp. 2d 1120, 1127 (D. Colo. 1999) (in analyzing alleged harms under negligence claims, "[w]hile there is no precise definition of what constitutes a serious physical manifestation or mental illness, courts have found generalized symptoms such as headaches, insomnia, crying spells, vomiting and diarrhea are insufficient" (internal quotation marks omitted)).

allegations are vague, conclusory, and contain no *specific* failures by DISH, based on any factual

support, that allegedly allowed the Incident to occur.  (*See* Compl. ¶¶ 120, 128, 136, 138-39.)[6]

### 3.    FTCA and HIPAA Are Not Valid Bases For Plaintiffs' Negligence *Per Se* Claim (Count II)

Plaintiffs' negligence *per se* claim is premised upon alleged violations of Section 5 of the

FTC Act ("FTCA") and HIPAA (Compl. ¶¶ 204-05), but both statutes fail to support this claim.

To establish a negligence *per se* claim, a "plaintiff must demonstrate: (1) that one of the purposes

of the statute or ordinance was to protect against the types of injuries or losses that plaintiff

sustained; (2) that the injuries suffered were of the kind the statute was enacted to prevent; (3) that

the statute or ordinance proscribes or prescribes specific conduct; and (4) that the defendant

violated the statute at issue."  *Trinity Universal Ins. Co. v. Streza*, 8 P.3d 613, 616 (Colo. 2000).

The negligence *per se* theory premised on HIPAA fails because Colorado does not

recognize negligence *per se* based on violation of a statute that does not create a private right of

action.  *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1163 (Colo. 2002) (*citing Canape v. Petersen*, 897

P.2d 762, 767 (Colo. 1995)).  HIPAA has no private cause of action.  *Med-Data*, 2022 WL 970862,

at *6; *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 553–55 (D.S.C. 2020).

Plaintiffs' theory premised on the FTCA also fails, for two reasons.  First, Colorado law

does not permit plaintiffs who are neither competitors nor consumers to recover under a theory of

negligence *per se* based on alleged violations of the FTCA.  *SELCO*, 267 F. Supp. 3d at 1297;

*Bellwether*, 353 F. Supp. 3d at 1086.  Second, Colorado "recognize[s] a cause of action for

---

[6] Moreover, in the unlikely event that the Court finds Plaintiffs have pled the existence and breach of a contract—*see infra*, § IV.B.4—and Plaintiffs prove the elements of that claim, then any remaining negligence claims will be barred under the economic loss rule.  *See Gordon*, 2018 WL 3653173, at *16, *R&R adopted in relevant part*, 344 F. Supp. 3d at 1244.

negligence *per se* only as to violations of statutes that prohibit specific conduct, as opposed to establishing a general standard of conduct." *Gordon*, 2018 WL 3653173, at \*19, *R&R adopted in relevant part*, 344 F. Supp. 3d 1231. "Section 5's prohibition of unfair . . . practices in or affecting commerce is too general to consider it a statutory duty within the meaning of negligence per se for . . . Colorado" law. *Id*. at \*20.

### 4. The Claims For Breach Of Contract (Count III) And Breach Of Implied Contract (Count IV) Fail

In Colorado, a breach of contract claim has four elements: "(1) the existence of a contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Spring Creek Exploration & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1033 (10th Cir. 2018) (internal quotation marks omitted). "The only difference between an implied contract and an express contract is that an implied contract arises from the parties' conduct, and an express contract arises from written or oral words." *Trujillo v. City of Colorado Springs*, 2008 WL 511890, at \*3 (D. Colo. Feb. 22, 2008) Plaintiffs fail to allege any of the required elements.

While the Complaint improperly cites to DISH's subscriber privacy policy as the basis for Plaintiffs' breach of contract claims (Compl. ¶¶ 30-31, 207-11), this policy is inapplicable to Plaintiffs, as none of them allege that they are DISH customers or that their subscriber data was impacted by the Incident.[7]  And while the "DISH Careers" webpage cited by Plaintiffs (*id*. ¶ 32

---

[7] DISH's subscriber privacy policy states that it applies to the collection, use, and disclosure of information of "DISH subscribers and others who visit DISH websites, view DISH advertisements, or interact with DISH products or services." (Ex. C at 1.)  It explicitly defines the term "you" as referring to "subscriber[s]" or "user[s]" of DISH services, and cannot, under any reasonable (*continued*) interpretation, purport to form a contract with DISH employees. (*Id*.)

n.4) does, in fact, contain a link to an "Employee Privacy and Fair Processing Notice," that privacy notice applies only to California employees, which no Plaintiffs claim to be (Exs. D, E).  Moreover, its terms preclude using it as a basis for any contract claims because it expressly states that "*[t]his Privacy Notice does not form part of any contract for employment or other contract to provide services.*"  (Ex. E at 1 (emphasis added).)  *See Sample v. City of Sheridan*, 2012 WL 1247223, at *11 (D. Colo. Apr. 13, 2012) (similar disclaimer precludes creation of a contract).

Plaintiffs' allegations of an implied contract also fail.  They allege that an implied contract was formed "through the parties' collective conduct" when they became employed by DISH "while also entrusting DISH" with their information.  (Compl. ¶ 230.)  These scattered allegations do not create even an inference that the safeguarding of Plaintiffs' personal information was bargained for or that there was a meeting of the minds.  Instead, as alleged, what was bargained for was employment—not the transfer and treatment of personal information.  *See e.g.*, *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1071–72 (C.D. Ill. 2016) ("[Plaintiff] did not pay for a side order of data security and protection; it was merely incident to her food purchase[.]").  Simply put, Plaintiffs have identified no applicable contract that contains any representations of privacy obligations that could form a basis for their breach of contract claims.

Even if Plaintiffs could establish the existence of a contract, they have not alleged any breach.  Plaintiffs have not identified specific provisions or duties within DISH's privacy policies that DISH failed to fulfill.  Plaintiffs also fail to plead that they incurred any cognizable damages from any purported breach of any contract.  "[D]amages that are merely speculative, remote, imaginary, or impossible of ascertainment, cannot be recovered."  *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1082 (10th Cir. 2001) (citations omitted).  As set

forth herein, Plaintiffs have not alleged any concrete damages.

### 5.    Plaintiffs' Claim For Unjust Enrichment Fails (Count V)

To state a claim for unjust enrichment, a plaintiff must establish: "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 616 (Colo. 2017). The benefits of employment services Plaintiffs allege DISH received do not result from the Incident. *See In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) ("If anything, the . . . complaint suggests that third-party hackers, not Defendants, are the ones who benefitted from the Data Breach.") Nor is retention of Plaintiffs' personal information an unjust enrichment. *Id.* (rejecting proposition that personally identifying information has independent monetary value).

### 6.    The Declaratory Judgment Claim Is Duplicative (Count VI)

The declaration Plaintiffs seek that DISH owes them a duty to secure their data and breached that duty (Compl. ¶ 251) is duplicative of their other claims and will neither settle the controversy nor "serve a useful purpose in clarifying the legal relations at issue." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). The request for prospective injunctive relief fails because Plaintiffs lack standing to seek injunctive relief. *Supra*, § IV.A.2.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, DISH respectfully requests the Court dismiss Plaintiffs' Complaint in its entirety.

20

Dated: January 30, 2024                     Respectfully submitted,


                                            */s/ Richard R. Patch*
                                            Richard R. Patch (CA State Bar No. 88049)
                                            Clifford E. Yin (CA State Bar No. 173159)
                                            Scott C. Hall (CA State Bar No. 232492)
                                            Sabrina A. Larson (CA State Bar No. 291661)
                                            **COBLENTZ PATCH DUFFY & BASS LLP**
                                            One Montgomery Street, Suite 3000
                                            San Francisco, CA 94104-5500
                                            Telephone: (415) 391-4800
                                            Facsimile: (415) 989-1663
                                            Email: ef-rrp@cpdb.com
                                                   ef-cey@cpdb.com
                                                   ef-sch@cpdb.com
                                                   ef-szl@cpdb.com

                                            Attorneys for Defendants
                                            DISH NETWORK L.L.C. and DISH
                                            NETWORK CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record hereby certifies that the foregoing document filed

through the ECF system will be sent electronically to the registered participants as identified on

the Notice of Electronic Filing (NEF).


Dated: January 30, 2024                    */s/ Richard R. Patch*
                                           Richard R. Patch

# APPENDIX 1

**HARMS ALLEGED BY NAMED PLAINTIFFS**

| Plaintiff's Name/ State (Compl. ¶ #s) | Time Spent | Fear and Anxiety | Spam Communi-cations | Attempted ID Theft / Charges | Unauthor-ized Charges | Loan Appli-cations or Credit Inquiries | Info on "Dark Web" |
|---|---|---|---|---|---|---|---|
| **Former Employee Class Plaintiffs** | | | | | | | |
| Dougherty (CO) (¶¶ 49-53) | X | X | | | | | |
| Abraham (WY) (¶¶ 59-63) | X | X | | | | | |
| Clark (CO) (¶¶ 70-75) | X | X | X | X | | | X |
| Cruse (TN) (¶¶ 76-81) | X | X | X | | | | X |
| Jenkins (WV) (¶¶ 82-87) | X | X | X | X | | X | X |
| Turley (IL) (¶¶ 88-93) | X | X | X | | | | X |
| Vest (VA) (¶¶ 94-99) | X | X | X | | X | X | X |
| **Current Employee Class Plaintiffs** | | | | | | | |
| Cook (FL) (¶¶ 44-48) | X | X | X | | | | |
| Bane (FL) (¶¶ 54-58) | X | X | X | | | | |
| Cardenas (TN) (¶¶ 64-69) | X | X | | | X | X | |
| **Family Member Class Plaintiffs** | | | | | | | |
| Looney (KS) (¶¶ 100-105) | X | X | X | | | X | |

009617.0101 4888-4026-0760.7